IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Davianna J., | ) |
|        *Plaintiff*, | ) ) ) ) Case No. 3:21-cv-50346 |
| v. | ) ) Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | ) ) ) |
|        *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Davianna J. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her child disability benefits and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**I. Background**

In January 2019, Plaintiff filed applications for child disability benefits and supplemental security income alleging a disability beginning on August 31, 2016 because of post-traumatic stress disorder, attention-deficit hyperactivity disorder, mild intellectual disabilities, oppositional defiant disorder, developmental delay, depression, and anxiety. R. 55-56. She turned 18 years old one month after her alleged onset date and turned 22 years old on September 21, 2020.[2]

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 6.
[2] An unmarried dependent child over the age of eighteen years is entitled to receive child disability benefits based on the earnings record of an insured parent who is entitled to disability benefits if the child has a disability that began before she became twenty-two years old. 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350(a)(2). The analysis for child disability benefits is essentially the same as it is for disability insurance benefits or supplemental security income, except that a plaintiff must establish that she became

Plaintiff suffered significant physical and emotional abuse during her childhood and through young adulthood. R. 524. Plaintiff also suffered from developmental delays. R. 365. Plaintiff has received mental health treatment since her childhood and special education services during school. R. 389. Plaintiff dropped out of high school during her sophomore year due to being bullied, and she later earned her GED. R. 357, 390. Although there are sporadic reports of Plaintiff's attempts to work, she has only ever had part-time employment. R. 38. Plaintiff testified that she was prevented from working full-time due to her anxiety, learning disabilities, and being overwhelmed easily. R. 39.

Following a hearing, an administrative law judge (ALJ) issued a decision in March 2021, finding that Plaintiff was not disabled through the date of the decision. R. 15-26. The ALJ found that Plaintiff had the following severe impairments: trauma and stressor-related disorders; depressive, bipolar, and related disorders; attention deficit hyperactivity disorder; and learning disorder. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform work at all exertional levels but with nonexertional limitations that included a limitation to: "simple, routine, and repetitive tasks performed in a work environment free from fast-paced production requirements and involving only simple, work-related decisions and routine workplace changes. There should be no more than occasional interaction with supervisors and coworkers with no tandem tasks and no interaction with the public." R. 19. The ALJ determined that Plaintiff had no past relevant work, but there were other jobs that existed in significant numbers in the national economy that she could perform, including hand packager, industrial cleaner, and laundry worker.

---

disabled before turning 22 years old. *See Tolefree v. Berryhill*, No. 16 C 7103, 2018 WL 4538783, at *4 n.7 (N.D. Ill. Sept. 21, 2018).

After the Appeals Council denied Plaintiff's request for review on July 16, 2021, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## III. Discussion

Plaintiff challenges the RFC determination in this case, arguing that the ALJ failed to: (1) confront multiple lines of evidence; (2) adequately evaluate her subjective symptoms; (3) properly evaluate the opinion evidence; and (4) fully incorporate her limitations into the RFC. Plaintiff first argues that the ALJ did not build a logical bridge between the evidence and the RFC determination because he failed to consider evidence of her inability to handle simple stressors and her need for a sheltered work environment that accommodates her need for assistance. Accordingly, Plaintiff challenges the ALJ's determination that she had no more than mild or moderate limitations in each

3

area of mental function. The Commissioner responds that the ALJ's mild to moderation limitations do not require greater RFC restrictions and the ALJ properly evaluated all the evidence when assessing Plaintiff's mental functioning. For the reasons discussed below, the Court agrees that a remand is required because the ALJ failed to adequately support the RFC determination.

A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history and findings, the effects of treatment, reports of daily activities, medical opinions, and effects of symptoms. 20 C.F.R. § 404.1545(a)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

Here, the ALJ summarizes most of the record but provides very little analysis of the evidence that supports the ultimate RFC determination. *See Alevras v. Colvin*, No. 13 C 8409, 2015 WL 2149480, at *4 (N.D. Ill. May 6, 2015) ("[M]erely summarizing medical evidence is not the same thing as analyzing it and explaining how the evidence supports the conclusion that the claimant is not disabled."). Accordingly, Plaintiff argues that the ALJ did not properly consider her low threshold for stress and the need for assistance when determining her functional limitations. The Court agrees that substantial evidence does not support the ALJ's RFC determination relating to Plaintiff's ability to interact with others and in incorporating appropriate restrictions in the RFC.

4

Although the ALJ's RFC determination largely mimics the findings adopted by the state agency reviewing physicians, the ALJ adopted a moderate, instead of mild, limitation in Plaintiff's ability to interact with others. The state agency physicians found that although Plaintiff was moderately limited in her ability to interact with the public, she was not significantly limited in her ability to ask questions and request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior. R. 62, 87. Accordingly, the state agency physicians opined that Plaintiff was only mildly limited in her ability to interact with others. R. 59, 84. As a result, they found that Plaintiff "would do best in a socially undemanding and restricted setting that requires reduced interpersonal contact, away from the public. [Plaintiff] could relate acceptably with a supervisor and coworkers to the minimally necessary degree." R. 63, 88.

In the ALJ's paragraph B and RFC analysis, the ALJ found that Plaintiff was moderately limited in her ability to interact with others. The Commissioner argues that there is no support for finding that a moderate limitation would require greater limitations. However, despite finding a moderate, instead of mild, limitation in interacting, the ALJ appears to have adopted an RFC that was less stringent than that of the state agency physicians. The state agency physicians, the only medical opinions the ALJ relied on in formulating the RFC, found that Plaintiff's *mild* limitations in interacting required reduced interpersonal contact and interaction with a supervisor and coworkers "to the minimally necessary degree." R. 63, 88. Despite finding moderate limits, the ALJ only restricted Plaintiff to occasional interaction with supervisors and coworkers with no tandem tasks. R. 19. The ALJ said nothing about considering Plaintiff's need for brief and superficial contact with those she works with to limit her interactions "to the minimally necessary

5

degree." R. 63, 88. *See Walton v. Berryhill*, No. 1:17-cv-00763-RLY-TAB, 2017 WL 6015807, at *3-4 (S.D. Ind. Nov. 14, 2017) (concluding that ALJ erred in incorporating some functional limitations similar to reviewing physicians' opinions and adopting other less restrictive limitations with "no basis in the record.").

The ALJ's only explanation for relying on the state agency reviewing physicians is as follows:

> The opinion of the State agency consultants is partially persuasive. The medical evidence of record supports the severe mental impairments assessed. However, the claimant's difficulties getting along with others and isolative behavior as noted by her mental health providers supports moderate limitations in social functioning. Further, the State agency consultant opinion is internally inconsistent. While mild limitations were assessed in interacting with others, [the state agency physician] also noted moderate limitations interacting appropriately with the general public, which is consistent with moderate limitations interacting with others.

R. 24. Although the ALJ credited Plaintiff's difficulties getting along with others and isolative behavior to find a moderate limitation, the ALJ gives no indication how Plaintiff's limitations in interacting were incorporated into the RFC. *See Jarnutowski v. Kijakazi*, No. 21-2130, 2022 WL 4126293, at *4 (7th Cir. Sept. 12, 2022) ("Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.") (internal quotation marks omitted).

Plaintiff points to her activities of daily living and the opinion of examining psychologist Dr. Carolyn Van Doren to argue that greater limitations were supported. The Commissioner argues that the ALJ properly discounted both sets of evidence. This Court disagrees.

The ALJ's only evaluation of Plaintiff's testimony and subjective symptoms is in the ALJ's paragraph B analysis at step three. In that analysis, the ALJ recognized Plaintiff's claimed panic attacks when going out in public, difficulty interacting with others and getting along with authority figures, and tendency to isolate herself. However, the ALJ relied on Plaintiff attending church and

6

visiting with her grandmother, her "improving" relationships with her mother and brother, and that Plaintiff expressed an interest in becoming more active in her church to find that Plaintiff was only moderately limited in interacting. R. 18-19. It is unclear to the Court how Plaintiff's relationships with her family and participation in church, where there was no indication of the extent of that participation, discredits Plaintiff's allegations of disabling anxiety. *See Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (finding an ALJ's subjective symptoms evaluation to be patently wrong when it "lacks any explanation or support."). Plaintiff explained that despite treatment and medication, her symptoms fluctuate daily but got worse when she left the house. R. 39-40. Plaintiff usually had someone accompany her out of the house because she would get overwhelmed and start "freaking out, and panicking, and getting flustered." R. 40. Plaintiff also testified that she had problems working in groups and would get overwhelmed and agitated by simple things. R.41-43. Plaintiff testified that even initiating a conversation was stressful for her. R. 41. Due to her depression, Plaintiff also had trouble remembering to shower, brusher her hair, eat, and take her medications. R. 42. Despite the Commissioner's argument that the ALJ accurately summarized Plaintiff's reported activities and was entitled to find Plaintiff's activities inconsistent with her claim of total disability, Def.'s Resp. at 4, 7, Dkt. 18, the ALJ provided no analysis for his conclusions to discount Plaintiff's allegations.[3]

      This is especially problematic, as Plaintiff points out, because Dr. Van Doren reviewed Plaintiff's subjective symptoms along with five hours of psychological evaluation and cognitive testing and concluded that Plaintiff's developmental delays combined with the consistent abuse she experienced at home and at school "most likely overwhelmed her threshold to stress." R. 365.

---

[3] While Plaintiff's symptoms often relate to more than one area of mental functioning, the Court notes that the remainder of the ALJ's paragraph B analysis suffers from a similar lack of explanation as to why Plaintiff's activities discredit her alleged symptoms. *See* R. 18-19.

As a result, Plaintiff remained "vulnerable to psychotic episodes when overwhelmed with stress." R. 365. Dr. Van Doren ultimately found that Plaintiff was "too easily overwhelmed at this point to work independently. Sheltered work would help her to form relationships and move toward autonomy. She has performed well in a supportive environment when she worked in a book shop. The overall goal should be autonomous functioning to her ability level." R. 367.

> The ALJ discounted Dr. Van Doren's January 15, 2019 opinion as follows:
>
> The claimant underwent a psychological evaluation with cognitive testing on January 15, 2019, with Carolyn Van Doren, R.N., Psy.D. The claimant recalled of [sic] history of abuse and special education. She also noted occasional auditory hallucinations. She did not demonstrate any memory deficits and her vocabulary appeared to be within normal limits. Cognitive testing with the WAIS IV test resulted in valid scores within the average range of intellectual functioning. The claimant was diagnosed with post-traumatic stress disorder, chronic; attention deficit hyperactivity disorder, predominantly inattentive by history; and major depressive disorder, recurrent with psychotic symptoms. The examiner opined that the claimant was "too easily overwhelmed at this point to work independently" and sheltered work was recommended (Exhibits 2F and 5F, pp. 66-76).
>
> This opinion is not persuasive. The psychologist did not indicate any specific work limitations based upon the claimant's mental diagnoses. Further, regarding opinions that the claimant is "disabled" or "unable to work," adjudicators will not provide an analysis of medical source statements on issues reserved to the Commissioner of Social Security (20 CFR 404.1520b and 416.927b).

R. 21.

The Commissioner states only that the ALJ properly explained his reasons for finding Dr. Van Doren's opinion not persuasive. However, the ALJ's decision again fails from a lack of explanation and analysis. The ALJ's conclusion that Dr. Van Doren's opinion did not indicate any specific work limitations is a misleading statement. It is true that Dr. Van Doren did not identify all the work limitations as set out by the state agency physicians. But Dr. Van Doren extensively evaluated Plaintiff's history and cognitive testing to conclude that Plaintiff's emotional distress, trauma, anxiety, hyperarousal, and cognitively intrusive experiences made her reluctant to engage

8

in new relationships and caused her to negatively act out. R. 364. Dr. Van Doren noted that Plaintiff had limited insight into the seriousness of her illness and that when Plaintiff becomes overwhelmed, including during auditory hallucinations, her solution is to seclude herself to prevent harm to others or get defensive. R. 361, 365. Due to Plaintiff's low threshold for stress, Dr. Van Doren determined that Plaintiff was prevented from working independently and required sheltered work. In light of the ALJ's determination that Plaintiff's mental impairments were severe and that Plaintiff had difficulty getting along with others and had isolative behaviors, he must provide more than a cursory dismissal of Dr. Van Doren's opinion that Plaintiff's combination of impairments required sheltered work.

The ALJ also rejects Dr. Van Doren's opinion as a finding reserved to the Commissioner. However, the ALJ never specifies why a finding that Plaintiff was unable to work independently was a disability finding that could be so easily disregarded without explanation. The ALJ provided no evaluation of Plaintiff's need for assistance or sheltered work. This determination is important because such a limitation would likely prevent competitive work. *See Cardenas v. Berryhill*, 17 CV 8242, 2018 WL 5311899, at *4 (N.D. Ill. Oct. 26, 2018) (stating that "sheltered work" is work unavailable in the competitive economy because it is uniquely tailored to the employee's limitations).

The ALJ was required to consider Plaintiff's symptoms relating to her mental impairments and the opinion evidence when evaluating Plaintiff's mental limitations in her ability to interact with others as part of the paragraph B analysis and in the RFC determination. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(c) (requiring the ALJ to "consider all evidence about [Plaintiff's] mental disorder and daily functioning before [ ] reach[ing] a conclusion about [Plaintiff's] ability to work."); 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled,

9

Case: 3:21-cv-50346 Document #: 22 Filed: 09/26/22 Page 10 of 11 PageID #:1298

we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). Throughout the decision the ALJ merely outlines records with no attempt to explain why the evidence either proves, or disproves, his conclusion. For the reasons stated above, the ALJ's decision does not provide a logical bridge between the evidence and his conclusion. *See Jarnutowski*, 2022 WL 4126293, at *3 ("[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and [his] conclusions.") (internal quotation marks omitted).

In remanding this case, the Court is not indicating that Plaintiff's symptoms or the opinion evidence requires a more restrictive RFC determination. Rather, on remand, the ALJ must engage in a more explicit analysis about the impact of Plaintiff's limitations on the RFC findings. *See Amey*, 2012 WL 366522, at *13 (requiring the ALJ to explain how he reached his RFC conclusions). In light of this Courts remand for a new RFC determination, any remaining issues not addressed herein shall be considered on remand along with the above issues. Plaintiff's counsel should raise all such issues with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion. This Court declines to order a finding

10

of disability based on the record before it. It is more appropriate to remand to the ALJ to properly evaluate the evidence as outlined above and issue a new decision.

Date: September 26, 2022        By:        _____
                                                            Lisa A. Jensen
                                                            United States Magistrate Judge